ROBERT LEE LANCASTER v. PATRICIA PRICE LANCASTER

No. COA99-911

(Filed 20 June 2000)

**1. Divorce— separation agreement—property settlement— confidential fiduciary relationship—adversaries**

The trial court did not err by declaring the separation agreement and property settlement valid based on the confidential fiduciary relationship terminating between the husband and wife when the parties became adversaries because: (1) the use of an attorney by one party but not the other ends a confidential relationship, and the record reveals that the attorney consulted by the parties was the husband's attorney only, despite the wife's assertion that she thought the attorney represented both of them; (2) although the parties attempted to work out the terms of the separation agreement between themselves, the parties did not

LANCASTER v. LANCASTER

[138 N.C. App. 459 (2000)]

amicably agree to all of the agreement's terms; (3) the wife moved out of the family home shortly after first meeting the husband's attorney, but before signing the separation agreement; and (4) the wife's contention that she moved out since she feared her husband also indicates the couple did not share a trusted and confidential relationship.

### 2. Divorce— separation agreement—property settlement— validity

The trial court did not err by declaring the separation agreement and property settlement valid because: (1) there was no evidence of fraud, duress, or undue influence by the husband on his wife to sign the agreement; (2) the agreement was not so inequitable to be unconscionable; and (3) the agreement is not invalid merely because one party later decides what she bargained for is not as good as she would have liked.

### 3. Divorce— separation agreement—property settlement— alleged mutual mistake of fact

Although defendant-wife contends there are four mutual mistakes of material fact comprising the essence of the parties' separation agreement, the trial court did not err by failing to alter the parties' agreement because: (1) plaintiff-husband offers no such argument, thereby negating the contention that the alleged mistakes were mutual; and (2) defendant's attempts to rescind or alter the contract are barred by the parol evidence rule.

### 4. Divorce— separation agreement—no material breach

The trial court did not err by concluding that plaintiff-husband did not commit a material breach of the separation agreement by failing to disclose the fact that he belonged to his current employer's retirement plan because: (1) plaintiff disclosed information about his former employer's retirement plan in which he was enrolled until summer 1995; (2) plaintiff's retirement plan at his current employment began in December 1995; (3) the parties agreed to use 16 June 1995 as their date of separation, and the parties agreed to equally divide plaintiff's retirement property from the date of marriage until the date of separation; and (4) the nondisclosure did not affect the terms of the agreement or defendant's share of the property since plaintiff did not join the latter retirement plan until after their agreed-upon date of separation.

LANCASTER v. LANCASTER

[138 N.C. App. 459 (2000)]

Appeal by defendant from judgment entered 18 November 1998 by Judge Ralph C. Gingles in Gaston County Superior Court. Heard in the Court of Appeals 10 May 2000.

*Page Dolley Morgan and Mark Warshawsky for the plaintiff-appellee.*

*Malcolm B. McSpadden for the defendant-appellant.*

WYNN, Judge.

Robert Lee Lancaster and Patricia Price Lancaster married in 1970 and their two children are now emancipated. During the marriage, Ms. Lancaster worked outside the home for the first three years, then she stayed home for several years to raise the children. During the last five years of their marriage, Ms. Lancaster once again worked outside of the home, earning about $215 each week. Mr. Lancaster earned approximately $1,700 each week at the end of the marriage. Mr. Lancaster handled most of the family's finances and made most of the family decisions. He paid most of the family's expenses out of his salary and he provided Ms. Lancaster with a generous monthly allowance to be spent however she wished. As time went on, the couple argued often. On 17 May 1996, Ms. Lancaster moved out of the family home.

Shortly before Ms. Lancaster moved out, she and Mr. Lancaster visited an attorney—Page Dolley Morgan—to discuss entering into a separation agreement. At first Ms. Lancaster thought that Ms. Morgan would represent both of them, but Ms. Morgan informed her that while she could answer Ms. Lancaster's questions seeking information, she could only give legal advice to Mr. Lancaster. On one of her visits, Ms. Morgan's paralegal suggested that Ms. Lancaster get her own attorney. Ms. Lancaster declined to seek the advice of another attorney. Mr. Lancaster and Ms. Lancaster signed the separation agreement on 14 June 1996. It dictated the terms of their property settlement, alimony, and settled the date of separation as 16 June 1995.

On 15 January 1997, Mr. Lancaster filed a complaint seeking a divorce based on one year separation and seeking the incorporation of the separation agreement. Ms. Lancaster filed an answer and counterclaim in which she denied the date of separation alleged by Mr. Lancaster, denied the validity of the separation agreement, and requested an equitable distribution of the marital property and

alimony. The district court entered a divorce judgment on 30 July 1997, holding all other issues until a later date.

On 11 February 1998, Ms. Lancaster obtained an order requiring Mr. Lancaster to respond to her discovery requests. Mr. Lancaster's attorney provided Ms. Lancaster with the requested information. The date of the trial was pushed back a number of times, with the hearing finally set for 5 October 1998. On 1 October 1998, Ms. Lancaster obtained an order requiring Mr. Lancaster to produce certain documents at the hearing. The district court struck that order the next day after determining that Mr. Lancaster had already furnished the requested information to Ms. Lancaster. The hearing occurred on 5 October and the trial court entered judgment on 18 November 1998, finding that the separation agreement was valid. Ms. Lancaster appealed to this Court.

## I.

[1] Ms. Lancaster first argues that the trial court erred in declaring the separation agreement and property settlement valid because the evidence showed the existence of a fiduciary relationship by Mr. Lancaster to Ms. Lancaster and showed unconscionability regarding the alimony and distribution terms of the agreement. We disagree.

To be valid, "a separation agreement must be untainted by fraud, must be in all respects fair, reasonable, and just, and must have been entered into without coercion or the exercise of undue influence, and with full knowledge of all the circumstances, conditions, and rights of the contracting parties." *Harroff v. Harroff*, 100 N.C. App. 686, 689, 398 S.E.2d 340, 342 (1990), *review denied*, 328 N.C. 330, 402 S.E.2d 833 (1991) (citation omitted). We may hold a separation agreement invalid if it is manifestly unfair to one because of the other's over-reaching. *See Stegall v. Stegall*, 100 N.C. App. 398, 401, 397 S.E.2d 306, 307 (1990), *review denied*, 328 N.C. 274, 400 S.E.2d 461 (1991).

During a marriage, a husband and wife are in a confidential relationship. In this relationship, the parties have a duty to disclose all material facts to one other, and the failure to do so constitutes fraud. *See Daughtry v. Daughtry*, 128 N.C. App. 737, 740, 497 S.E.2d 105, 107 (1998). Further, a presumption of fraud arises where the fiduciary in a confidential relationship benefits in any way from the relationship. *See Curl by and Through Curl v. Key*, 64 N.C. App. 139, 142, 306 S.E.2d 818, 821 (1983), *rev'd on other grounds*, 311 N.C. 259, 316 S.E.2d 272 (1984). In such a case, the burden shifts to the fiduciary to

show that the transaction was a voluntary act of the alleged victim. *See id.* Finally, even spouses not in a confidential relationship may not engage in unconscionable behavior when entering into a separation agreement. *See King v. King,* 114 N.C. App. 454, 457, 442 S.E.2d 154, 157 (1994). Unconscionability is both procedural—consisting of fraud, coercion, undue influence, misrepresentation, inadequate disclosure, duress, and overreaching; and substantive—consisting of contracts that are harsh, oppressive, and one-sided. *See id.* at 458, 442 S.E.2d at 157.

Ms. Lancaster argues that she and Mr. Lancaster had a confidential relationship at the time they entered into the separation agreement. Ms. Lancaster asserts that Mr. Lancaster stood in a fiduciary relationship to her, and he must be held to the stringent rules set forth above. However, while a husband and wife generally share a confidential relationship, this relationship ends when the parties become adversaries. *See Avriett v. Avriett,* 88 N.C. App. 506, 508, 363 S.E.2d 875, 877, *aff'd,* 322 N.C. 468, 368 S.E.2d 377 (1988). It is well established that when one party to a marriage hires an attorney to begin divorce proceedings, the confidential relationship is usually over, *see id.*, although the mere involvement of an attorney does not automatically end the confidential relationship. *See Harroff,* 100 N.C. App. at 690, 398 S.E.2d at 343; *Sidden v. Mailman,* 2000 WL 517914 (N.C. App. 2 May 2000). Further, when one party moves out of the marital home, this too is evidence that the confidential relationship is over, although it is not controlling. *See Harroff; Sidden.*

Ms. Lancaster asserts that, although she and Mr. Lancaster were proceeding with a divorce and she had moved out of the family home, their confidential relationship continued. She bases this argument on the fact that she and Mr. Lancaster tried to work out the terms of the separation themselves, *see Harroff,* and because they consulted the same attorney for advice. She further asserts that because she did not seek her own counsel or advice from her family, but instead trusted Mr. Lancaster to treat her fairly, the confidential relationship continued.

However, the trial court found, and we agree, that the confidential relationship between Mr. Lancaster and Ms. Lancaster did not exist when the parties signed the separation agreement. The record shows that Ms. Morgan was Mr. Lancaster's attorney only, despite Ms. Lancaster's assertion that she *thought* Ms. Morgan represented both of them. First, Ms. Lancaster visited Ms. Morgan's office only two or three times, as compared to the numerous visits made by Mr.

Lancaster. Second, the separation agreement explicitly states that Ms. Morgan is Mr. Lancaster's lawyer. Third, at the Lancasters' initial consultation, Ms. Morgan stated that she could answer Ms. Lancaster's questions seeking information, but could only give legal advice to Mr. Lancaster. Finally, Ms. Morgan's paralegal advised Ms. Lancaster to seek her own counsel before signing the separation agreement. Ms. Lancaster's refusal to seek her own counsel may not now be used as a means of alleging unconscionability. Indeed, the facts before us are quite similar to those in *Avriett*, in which we held that the use of an attorney by one party but not the other ended the confidential relationship.

Further, although working out the terms of a separation agreement themselves indicates that a divorcing couple is not adversarial but still in a confidential relationship, the record shows that the Lancasters did not amicably agree to all of the agreement's terms, but rather argued over such things as the amount of alimony. Moreover, Ms. Lancaster moved out the family home shortly after first meeting Ms. Morgan, but before signing the separation agreement. Her contention that she moved out because she feared Mr. Lancaster also indicates that the couple did not share a trusted and confidential relationship.

We distinguish the factually similar case of *Sidden v. Mailman, supra,* in which we found a fiduciary duty between a separating husband and wife. The evidence in the case at bar shows the end of a fiduciary duty between Mr. Lancaster and Ms. Lancaster based on the fact that the parties here were more clearly adversaries. Mr. Lancaster's attorney did more than merely formalize the terms of an amicable separation, but rather advised and assisted Mr. Lancaster alone. Also, Ms. Lancaster had left the family home out of fear of her husband. As further comparison, the wife in *Sidden* alleged a breach of fiduciary duty based on her husband's failure to disclose the existence of a $158,100 retirement account. In this case, Ms. Lancaster does not allege such a material breach, but rather argues only that the separation agreement was unfair.

[2] Since no confidential relationship existed between the Lancasters, we now review the agreement as we would any other bargained-for exchange between parties who are presumably on equal footing. *See Knight v. Knight,* 76 N.C. App. 395, 398, 333 S.E.2d 331, 333 (1985). In determining the validity of a separation agreement, we are not required to make an independent determination as to whether the agreement is fair. Absent a showing of any wrongdoing by a party

to the agreement, "we must assume that this arrangement was satisfying to both spouses at the time it was entered into." *Hagler v. Hagler*, 319 N.C. 287, 293, 354 S.E.2d 228, 234 (1987).

In this case, the trial court found, and we agree, that there was no evidence of fraud, duress, or undue influence by Mr. Lancaster on Ms. Lancaster to sign the agreement. Further, we do not find that the agreement was so inequitable as to be unconscionable. A separation agreement is not invalid merely because one party later decides that what she bargained for is not as good as she would have liked.

## II.

**[3]** Ms. Lancaster next argues that the trial court erred by failing to address issues raised by the pleadings of reformation of the separation agreement to conform with uncontroverted evidence of both parties. We disagree.

Ms. Lancaster alleges four different areas of contention: (1) She and Mr. Lancaster agreed that $18,000 of their savings account would be used to pay for their daughters' education; however, no provision was made for these funds in the separation agreement; (2) both parties agreed that Mr. Lancaster's retirement plans would be divided equally by a qualified domestic relations order; however, the parties disagree as to which separation date should be used and therefore, the amount of benefits to be divided; (3) the balance of the parties' saving and checking accounts, after deducting $20,000 of Mr. Lancaster's separate property and $18,000 for the daughters' education, would be split evenly; but apparently, it was not split evenly; and (4) the parties intended to divide their furniture equally but did not do so. Ms. Lancaster alleges that these "mutual mistakes" should be rectified by this Court, since the separation agreement did not reflect the true intentions of the parties.

It is well established that the existence of a mutual mistake as to a material fact comprising the essence of the agreement will provide grounds to rescind a contract. *See Mullinax v. Fieldcrest Cannon, Inc.*, 100 N.C. App. 248, 251, 395 S.E.2d 160, 162 (1990). "A mutual mistake of fact is a mistake 'common to both parties and by reason of it each has done what neither intended.' " *Swain v. C & N Evans Trucking Co., Inc.*, 126 N.C. App. 332, 335, 484 S.E.2d 845, 848 (1997) (citation omitted). Although Ms. Lancaster argues that the separation agreement contains "mutual mistakes," Mr. Lancaster offers no such argument, thereby negating the contention that the alleged mistakes

were "mutual." Moreover, Ms. Lancaster's attempts to rescind or alter the contract are barred by the parol evidence rule, which forbids the admittance of evidence used to alter the written terms of a contract. The parol evidence rule provides that when parties have formally and explicitly expressed their contract in writing, that contract shall not be contradicted or changed by prior or contemporaneous oral agreements. *See Gaylord v. Gaylord*, 150 N.C. 222, 230, 63 S.E. 1028, 1032 (1909). Ms. Lancaster attempts to add or change four terms of the separation agreement by arguing that she and Mr. Lancaster really agreed to terms other than those expressly written in the agreement. However, the parol evidence rule bars that evidence.

III.

[4] Ms. Lancaster next argues that the trial court erred by failing to address the issue of recission of the separation agreement based on Mr. Lancaster's material breach thereof. We disagree.

Ms. Lancaster alleges that Mr. Lancaster breached the separation agreement by not revealing the full extent of his property as required by the agreement. Specifically, Ms. Lancaster alleges that Mr. Lancaster failed to disclose the fact that he belonged to his current employer Weyerhauser's retirement plan and the value of that plan, despite a court order requiring that he provide that specific information. She also argues that he failed to disclose to her that using an earlier separation date in the agreement could affect the value of her share of his retirement plans.

Rescission of a separation agreement requires a material breach of the agreement—a substantial failure to perform. *See Cator v. Cator*, 70 N.C. App. 719, 722, 321 S.E.2d 36, 38 (1984). Small lapses or inconsequential breaches are not substantial breaches requiring rescission.

Mr. Lancaster provided information about his former employer Westvaco's retirement plan, in which he was enrolled until summer 1995. Mr. Lancaster's retirement plan at Weyerhauser began in December 1995. The parties agreed to use 16 June 1995 as their date of separation. They also agreed to equally divide Mr. Lancaster's retirement property from the date of marriage until the date of separation set forth in the agreement. Although Mr. Lancaster did not disclose his enrollment in the Weyerhauser retirement plan, this nondisclosure did not affect the terms of the agreement, nor did it affect Ms. Lancaster's share of the property since Mr. Lancaster did not join this program until after their agreed-upon date of separation. We, there-

fore, conclude that Mr. Lancaster did not commit a material breach of the separation agreement.

## IV.

We have reviewed Ms. Lancaster's remaining arguments and finding no error, we affirm the decision of the trial court to uphold the validity of the separation agreement.

Affirmed.

Judges MARTIN and SMITH concur.